## PEOPLE v HUNTER

Docket No. 78-224. Submitted January 18, 1979, at Detroit.—Decided May 1, 1979. Leave to appeal denied, 406 Mich 1006.

Robert D. Hunter was arrested under a Detroit municipal ordinance which prohibits knowingly loitering in a place where narcotics paraphernalia are kept or sold. A subsequent search of Hunter's person revealed a quantity of suspected heroin, and he was charged with possession of heroin with intent to deliver. The defendant moved to quash the information and the Recorder's Court of Detroit, George W. Crockett, Jr., J., granted the motion and dismissed the case, finding the ordinance under which the defendant was arrested to be unconstitutional. The people appeal. *Held:*

The ordinance restricts the fundamental right of freedom of association and, although it is concerned with the compelling state interest in curbing the illegal use and trafficking of drugs, a less drastic way of seeking to do so would be a requirement of an intent to participate in unlawful activity. Mere knowledge of the presence of narcotics paraphernalia is not always detrimental to the public good. The ordinance is unconstitutional.

Affirmed.

J. H. GILLIS, J., dissented. He would hold that knowingly acquiescing to the presence of narcotics paraphernalia is sufficient to constitute conduct detrimental to the public good. Because the ordinance contains the knowledge requirement, it proscribes only conduct which is detrimental to the public good and is not overbroad. Its infringement on freedom of association is outweighed by the governmental interest in preventing illicit drug activity. He would reverse.

### OPINION OF THE COURT

1. CONSTITUTIONAL LAW — FREEDOM OF ASSOCIATION — COMPELLING STATE INTEREST.

   Governmental restriction upon the fundamental right of freedom

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Constitutional Law §§ 353, 355.

[2, 3] 21 Am Jur 2d, Criminal Law § 5.

56 Am Jur 2d, Municipal Corporations, Counties, and other Political Subdivisions § 361.

of association cannot be tolerated absent justification by a compelling state interest, and even where such an interest exists, a restrictive regulation will be held unconstitutional if the state interest can be achieved by a less drastic alternative.

2. CRIMINAL LAW — ORDINANCES — DRUGS AND NARCOTICS — LOITERING — KNOWLEDGE — INTENT.

Mere knowledge of the presence of narcotics paraphernalia is not always detrimental to the public good; an ordinance which makes it illegal to "knowingly loiter" in a place where narcotics paraphernalia are present is unconstitutional because there is a less drastic way of seeking to curb drug abuse, which is to require the intent to participate in unlawful activity (Detroit Municipal Code, § 28-8-8).

DISSENT BY GILLIS, J.

3. CRIMINAL LAW — ORDINANCES — DRUGS AND NARCOTICS — LOITERING — FREEDOM OF ASSOCIATION.

*Knowingly acquiescing to the presence of narcotics paraphernalia is conduct which is harmful to the public good; the government interest in preventing illicit drug activity outweighs the minimal infringement on freedom of association which results where an ordinance proscribes "knowingly loitering" in a place where narcotics paraphernalia is located and where the ordinance proscribes only harmful conduct and is not overly broad (Detroit Municipal Code, § 28-8-8).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney.

Before: D. C. RILEY, P.J., and J. H. GILLIS and MACKENZIE, JJ.

MACKENZIE, J. The facts of this case are fully set forth in the dissenting opinion.

This case involves the fundamental right of freedom of association, and governmental restriction upon that right cannot be tolerated absent

justification by a "compelling state interest". *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1972). Further, despite the existence of such a concern, the regulation fails to pass constitutional muster if that interest can be achieved by a "less drastic alternative". *Shelton v Tucker,* 364 US 479; 81 S Ct 247; 5 L Ed 2d 231 (1960).

There is no doubt that the state's interest in curbing the illegal use and trafficking of drugs is a compelling one. However, that interest was not achieved through the most narrow means in the case at bar. We reject the assumption that mere knowledge of the presence of narcotics paraphernalia is always detrimental to the public good. Under such "knowledge" standard, persons with acceptable or laudable reasons for being knowingly present where paraphernalia and/or drugs are allegedly located could be prosecuted under the ordinance. Counselors, religious advisors, or other persons seeking to work with drug users on their own ground would be covered. Family members, aware that a person was using drugs in the home, but not wishing to sever ties, could likewise be convicted.

As there exists a less drastic way of seeking to curb drug abuse, *i.e.,* the requirement of an *intent* to participate in the unlawful activity, see *People v Pagnotta,* 25 NY2d 333; 253 NE2d 202; 305 NYS2d 484 (1969), we find the ordinance at issue unconstitutional, and affirm the lower court's decision to quash the information.

D. C. RILEY, P.J., concurred.

J. H. GILLIS, J. *(dissenting).* Defendant was charged with possession of heroin with intent to deliver, MCL 335.341(1)(a); MSA 18.1070(41)(1)(a). Pursuant to a defense motion, the trial court

quashed the information. From this action, plaintiff appeals.

Defendant was found in the living room of a house the police had entered pursuant to a search warrant. Syringes and other narcotic paraphernalia were in plain view. Defendant was arrested for knowingly loitering in a place where such paraphernalia is kept or sold. Detroit Municipal Code, § 28-8-8. A search of defendant revealed a quantity of powder alleged to contain heroin.

After being bound over on the instant charge defendant made a motion to quash the information. The trial court found the ordinance under which defendant was initially arrested to be unconstitutional on the basis of *People v Smith,* 75 Mich App 64; 254 NW2d 654 (1977).

In *Smith,* this Court found the following Dearborn ordinance unconstitutional:

" 'No person shall loiter in any place within the City of Dearborn where marijuana or paraphernalia used or adapted for use with marijuana are used, sold, dispensed, furnished, given away, or stored, or otherwise illegally kept.' " *Id.,* at 66.

The Court stated that the ordinance infringed upon First Amendment freedom of association. Applying the "compelling state interest" test the Court concluded that there were less drastic ways to achieve the state interest in curbing illegal drug activity than to make "mere presence" a crime. In addition, while the trial court had implied a "knowledge" requirement, this Court refused to read such a requirement into the ordinance. Consequently, the ordinance was found unconstitutional on its face due to vagueness and overbreadth. *Id.,* at 69-70.

Section 28-8-8 of the Detroit Municipal Code, the ordinance at issue here, provides:

"No person shall *knowingly* loiter about, frequent or live in any building, apartment, store, automobile, boat, boathouse, aeroplane or other place of any description whatsoever where narcotic drugs, hypodermic syringes, needles or other instruments or implements or empty gelatin capsules are sold, dispensed, furnished, given away, stored or kept illegally." Ch 187, § 9, City (Detroit) Ordinances (1954). (Emphasis supplied.)

The essential difference between this ordinance and the ordinance struck down in *Smith* is that the Detroit ordinance does include a "knowledge" requirement. While the Dearborn ordinance made completely innocent conduct a crime, the Detroit ordinance applies only to conduct harmful to the public good. It must be shown that the person loitered in a place knowing illegal narcotic paraphernalia was kept or sold there. *Detroit v Hodges,* 13 Mich App 531; 164 NW2d 781 (1968). The Court in *Hodges* noted the following:

"To sustain a conviction, there must be evidence to show (1) loitering, (2) in a place where narcotic drugs or narcotic paraphernalia are illegally sold, dispensed, furnished, given away, or stored, and (3) that the defendant, when loitering in such place, knew that the narcotic paraphernalia were illegally stored or kept there. There must be evidence to show beyond a reasonable doubt the existence of each element of the offense. The word 'loiter' has no sinister meaning and, by itself, implies no wrongdoing or misconduct or engagement in prohibited practices. *City of Seattle v Drew* (1967), 70 Wash 2d 405 (423 P2d 522, 524); *Cates v Jones* (Tex Civ App, 1939), 129 SW2d 476, 477; *Territory of Hawaii v Anduha* (CA 9, 1931), 48 F2d 171, 172. *Only where the statute or ordinance clearly distinguishes between conduct calculated to harm or the prohibited activity on*

the one hand, and essentially innocent conduct on the other hand, can a conviction be upheld; and only where such distinctions have been made have convictions been sustained. CL 1948, § 750.167 as amended by PA 1964, No 144 (Stat Ann 1968 Cum Supp § 28.364). Consistent with the above principles, the Michigan disorderly persons statute distinguishes between the conduct proscribed and all other innocent loitering. It proscribes loitering where the defendant is aware of the illegality of the occupation or business." (Emphasis supplied.) 13 Mich App at 534.

In *People v Morris,* 66 Mich App 514, 519; 239 NW2d 649 (1976), the Court, in discussing the ordinance under consideration here, stated:

"[S]ome conduct deleterious to the public good must be connected to the loitering. In this case, that conduct is the knowing acquiescence of narcotics paraphernalia in an individual's presence."

The Detroit ordinance is not drawn as narrowly as was the ordinance upheld against a constitutional challenge in *People v Pagnotta,* 25 NY2d 333; 305 NYS2d 484; 253 NE2d 202 (1969). There, the proscribed activity consisted of loitering with intent to acquire or use a forbidden substance. Nevertheless, I would conclude that because the Detroit ordinance proscribes only conduct which is harmful to the public good it is not overbroad as was the ordinance struck down in *Smith.* Any infringement upon freedom of association is minimal and outweighed by the governmental interest in preventing illicit drug activity.

I would reverse.