CITY OF AKRON *v.* HOLLEY.

(No. 89 CRB 6683—Decided November 16, 1989.)

Akron Municipal Court.

*Gregg Manes,* assistant city prosecutor, for the city of Akron.
*Belinda Hinton,* for the defendant.

TED SCHNEIDERMAN, J. On September 26, 1989, the defendant, Jason Holley, through his attorney, filed a motion to dismiss claiming that the ordinance under which the defendant is charged is unconstitutional on its face. Defendant was charged with violating the recently enacted ordinance of the city of Akron captioned "Loitering for the Purpose of Engaging in Drug-Related Activity," as set forth in Section 138.26 of the Akron Codified Ordinances. ("Section" 138.26 is set forth in the Appendix.)

The defendant in his motion to dismiss and supporting brief argues three separate grounds for the unconstitutionality of the ordinance, which are as follows: (1) The ordinance is void for vagueness; (2) The ordinance is overbroad in its reach as it prohibits constitutionally protected conduct; and (3) The ordinance violates the Equal Protection Clause of the United States Constitution.

Time was granted and then extended to allow the parties adequate time to consider the issues. Both sides spent considerable time and energy in the preparation of their respective briefs, supplements and responses, and they are commended for their efforts.

Since the effective date of the ordinance, June 30, 1989, over one hundred fifty individuals have been charged with violating Section 138.26, and many of these cases are awaiting a ruling on the same or similar issues raised by counsel in this case. The other five Akron Municipal Court judges have under consideration the constitutionality of this ordinance, and as far as this judge knows, no determination has been announced. It has been the subject of considerable discussion and disagreement between some of the members of the city of Akron Prosecutor's Office, Summit County Legal Defender's staff and other interested persons. The following is this court's modest attempt to wrestle with the wording of Section 138.26 and the issues raised by the defendant's attorney.

Since mid-summer of 1988, illegal drug use in Akron has increased to an alarming level, and the number of drug-related arrests has skyrocketed. To date, most of the increase is caused by the influx of crack cocaine. The level of other crime has also increased, particularly violent crime. Much of this increase is believed to be drug related. So-called drug houses have sprung up all over Akron, especially in the older neighborhoods. The number of drug houses is reported to be in the hundreds, and the number is constantly changing. The presence of drug houses not only causes illegal drug trade but also other crime. The very existence of some residential areas is threatened. The ordinance is a reaction to this crisis. In enacting the ordinance Akron

City Council, in Section 3, declared it to be an emergency measure "* * * because the city's drug problems are increasing rapidly, causing immediate and imminent danger to the public health and safety and to property in the area where drug sales and use are taking place. * * *"

A municipality is granted authority to adopt and enforce local police regulations within their jurisdiction under Section 3, Article XVIII of the Ohio Constitution. Such legislation must have a real and substantial relation to the public peace, health, safety, welfare or morals. *Cleveland* v. *Raffa* (1968), 13 Ohio St. 2d 112, 42 O.O. 2d 329, 235 N.E. 2d 138; *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 4 O.O. 2d 113, 146 N.E. 2d 854. Generally, as long as the legislation has that real and substantial relation and is not arbitrary, discriminatory, capricious or unreasonable, it will not infringe upon the United States and Ohio Constitutions. *Kelley* v. *Johnson* (1976), 425 U.S. 238; *Cincinnati* v. *Correll* (1943), 141 Ohio St. 535, 26 O.O. 116, 49 N.E. 2d 412. The defendant is not questioning this general authority.

This legislation is presumptively constitutional. *State, ex rel. Jackman,* v. *Court of Common Pleas* (1967), 9 Ohio St. 2d 159, 38 O.O. 2d 404, 224 N.E. 2d 906; *Hoover* v. *Bd. of Franklin Cty. Commrs.* (1985), 19 Ohio St. 3d 1, 19 OBR 1, 482 N.E. 2d 575; *South Euclid* v. *Jemison* (1986), 28 Ohio St. 3d 157, 28 OBR 250, 503 N.E. 2d 136. Local governments are presumed to be familiar with their community conditions and the needs of their citizens, and they can best formulate the appropriate legislation. *Allion* v. *Toledo* (1919), 99 Ohio St. 416, 124 N.E. 237, 6 A.L.R. 426. The burden is on the defendant to demonstrate that the action of the city council is clearly erroneous. *Benjamin* v. *Columbus, supra.* The vagueness and overbreadth arguments will be defined and then discussed together.

(1) VAGUENESS. The defendant maintains that Section 138.26 is void for vagueness due to the fact that it does not give fair notice of the proscribed conduct and fails to prevent arbitrary enforcement of the law.

When considering whether or not an enactment is void for vagueness, a two-part test must be applied. First, a law must give a person of ordinary intelligence an opportunity to know what is prohibited so that he can act accordingly. In other words, the criminal enactment must give fair notice as to what is prohibited. Second, the law must provide explicit standards for those who apply them so as to avoid arbitrary and discriminatory enforcement. *Grayned* v. *City of Rockford* (1972), 408 U.S. 104; *State* v. *Young* (1980), 62 Ohio St. 2d 370, 16 O.O. 3d 416, 406 N.E. 2d 499. In *Kolender* v. *Lawson* (1983), 461 U.S. 352, 358, Justice O'Connor put the proposition a little differently when she stated:

"* * * [W]e have recognized recently that the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.' * * *"

(2) OVERBREADTH. Defendant argues that Section 138.26 adversely impacts on the right of association encompassed within the First Amendment.

Loitering, loafing, and associating are all constitutionally protected activities. *Papachristou* v. *City of Jacksonville* (1972), 405 U.S. 156. An ordinance may violate constitutional rights if it sweeps within its prohibition what may not be punished under the First and Fourteenth Amendments. And even though a statute written clearly and precisely may not be vague,

it may be found overbroad if in its reach it prohibits constitutionally protected conduct. *Grayned* v. *City of Rockford, supra.*

It is a long-accepted principle that the mere status of an individual cannot be made criminal. *Robinson* v. *California* (1962), 370 U.S. 660. An ordinance cannot make an activity criminal which is normally innocent, nor can a city outlaw vagrancy when it empowers police to arrest all "suspicious" persons. *Papachristou* v. *City of Jacksonville; supra.* In *Kolender* v. *Lawson, supra,* a California loitering statute was found unconstitutional because it required a person to account for his presence and provide identification without a clear standard or clarification. A local example of an unconstitutionally vague ordinance can be found in *Akron* v. *Goins* (July 15, 1987), Summit App. Nos. 12582, 12583, 12584 and 12585, unreported. The ordinance prohibited any person from being on premises that he knew or had reasonable cause to believe was used to sell or give away intoxicating liquors in violation of law.

The question of whether Section 138.26 is void for vagueness or is overbroad on its face turns on the interpretation of the language in that section. The eleven subparagraphs listed in Section 138.26(B) have no bearing on this question as they are "[a]mong the circumstances which *may* be considered in determining whether such purpose is manifested * * *" (emphasis added), Section 138.26(B). A prosecution under Section 138.26 may suggest the use of any one, all or none of the "circumstances" under Section 138.26 (B) and the question of the constitutionality of any separate subparagraph must await its application in a particular case.

Section 138.26(A) is the part of the ordinance which makes certain conduct a crime. It states that no person shall loiter in certain places in a manner and under circumstances manifesting a purpose to engage in prohibited drug-related activity contrary to the provisions of R.C. Chapter 2925. The word "loiter" has a meaning that is clear to most people, the "place" is determinable except it may be subject to interpretation in a particular case, and the words "drug-related activity contrary to * * * [R.C.] Chapter 2925" are determinable, although the phrase may be a challenge to a judge giving instructions to a jury. The phrase that is open to argument is "* * * in a manner and under circumstances manifesting the purpose."

The verb "manifest" is defined in Webster's Third New International Dictionary (1986), at page 1375, as follows: "to show plainly: make palpably evident or certain by showing or displaying * * *."

Apparently, the ordinance requires that a person clearly and unmistakably have the purpose to engage in illegal drug activity; however, the phrase may be open to a different construction. This court suggests three different possible interpretations.

The first possible interpretation is that Section 138.26(A) does not contain the requirement that the defendant must have a criminal purpose, only that he clearly appear to be engaged in an illegal purpose. Thus, a person may be found guilty without proving the culpable mental state of acting purposely. This interpretation would permit a defendant to be found guilty when he loiters in a place defined in the ordinance in a manner which in the opinion of the officer *appears* to be illegal drug-related activity. This interpretation runs afoul of both grounds contained in the void-for-vagueness test, is overbroad, and is therefore unconstitutional.

A second possible interpretation is that the phrase "in a manner and

under circumstances manifesting" is only suggestive or has no meaning. This view requires the city to prove that the accused loitered for the purpose of engaging in illegal drug-related activity. In other words, the wording of Section 138.26(A) means that no person shall loiter in a certain place with the purpose of engaging in illegal drug-related activity. At a November 13, 1989 hearing, the Chief City Prosecutor advanced this construction and rejected the first interpretation.

This interpretation would bring the language close to the wording of Akron's loitering-for-prostitution ordinance and other related ordinances that have been upheld by appellate courts, including the Ninth Appellate District. In *Akron* v. *Parrish* (Mar. 10, 1982), Summit App. No. 10385, unreported, the appellate court affirmed the ruling of the lower court (see [1981], 1 Ohio Misc. 2d 7, 1 OBR 89, 437 N.E. 2d 1220) and found that the loitering-for-prostitution ordinance provided a clear standard by which a person can conform his conduct and provide sufficiently definite guidelines for enforcement by police. The Cleveland Municipal Court upheld a very similar ordinance in *Cleveland* v. *Howard* (1987), 40 Ohio Misc. 2d 7, 532 N.E. 2d 1325. See, also, *Akron* v. *Massey* (1978), 56 Ohio Misc. 22, 10 O.O. 3d 216, 381 N.E. 2d 1362.

The second interpretation ignores the words in the ordinance and their plain meeting. The first two interpretations must be rejected.

The third interpretation is that in addition to a criminal purpose, a person must commit an overt act or a circumstance must be present before the crime is complete. This interpretation requires that a person loiter in a defined place, with the purpose of engaging in a prohibited drug-related activity, *and* that the person's actions satisfy one of the circumstances under Section 138.26(B) or some other overt act or circumstance be present manifesting such purpose. The elements of the crime are as follows:

(1) Loiter;

(2) In or near any thoroughfare, place open to the public or near any public or private place;

(3) In a manner and under circumstances manifesting a purpose to engage in drug-related activity contrary to R.C. Chapter 2925; and

(4) Purpose to engage in drug-related activity contrary to R.C. Chapter 2925.

This construction is in harmony with the appellate decision in *Akron* v. *Parrish, supra,* which, in rejecting the appellant's contention that the ordinance under consideration was unconstitutional, stated as follows:

"* * * The Akron Ordinance requires that an illegal purpose, *i.e.,* solicitation for prostitution, be present in addition to mere loitering. In order to justify an arrest, *this illegal purpose must be manifested by some overt * * * act[ ] * * *.*" (Emphasis added.) *Id.* at 5.

*Cleveland* v. *Howard, supra,* followed the same reasoning. Parallel decisions can be found in *Seattle* v. *Jones* (1970), 3 Wash. App. 431, 475 P. 2d 790, affirmed (1971), 79 Wash. 2d 626, 488 P. 2d 750; and *Ford* v. *United States* (D.C. App. 1985), 498 A. 2d 1135.

The latter interpretation avoids any infringement of the Ohio and United States Constitutions. It is the most sensible and logical construction, and it follows the apparent intention of the drafters. This meaning complies with the well-established rule that a court should, if possible, give legislation such construction as will permit it to operate lawfully and constitutionally. As a side benefit, it gives the fairest notice as to what is prohibited and the most explicit standards. This inter-

pretation is the one that this court will follow, of course, unless an appellate court instructs otherwise. The city's opposition brief and reply brief seem to suggest this construction.

This interpretation provides a clear and explicit standard for the police and protects the individual from arbitrary and unreasonable police action. It follows the pattern of court interpretations in both federal and Ohio courts.

This result is in harmony with court decisions from other states. In *People* v. *Pagnotta* (1969), 25 N.Y. 2d 333, 305 N.Y. Supp. 2d 484, 253 N.E. 2d 202, 48 A.L.R. 3d 1264, the highest court in New York turned down a challenge to the constitutionality of the statute making it illegal to loiter for the purpose of unlawfully using or possessing any narcotic drug. This is contrasted with a later case in the same court in which it struck down a statute prohibiting loitering in transportation facilities when the accused failed to give a satisfactory account of himself. *People* v. *Bright* (1988), 71 N.Y. 2d 376, 526 N.Y. Supp. 2d 66, 520 N.E. 2d 1355. The court when considering its earlier decision in *Pagnotta, supra,* stated:

"We have upheld loitering statutes only when they either prohibited loitering for a specific illegal purpose or loitering in a specific place of restricted public access * * *. Thus, statutes making it a crime to loiter for the purpose of using illegal drugs or for the purpose of engaging in prostitution have been upheld. Such laws provide the ordinary citizen with adequate notice of the exact condition prohibited, and require the officer on-the-scene to objectively observe some definable impermissible act in order to find probable cause to arrest, thereby foreclosing the possibility that the law will be arbitrarily enforced * * *." 71 N.Y. 2d at 384, 526 N.Y. Supp. 2d at

70, 520 N.E. 2d at 1359. See, also, Annotation (1973), 48 A.L.R. 3d 1271.

The defendant's briefs cite several cases finding ordinances, which made it a crime to loiter for drug activity, unconstitutional. The defendant claims that these decisions support the contention that Section 138.26(A) is unconstitutional. However, a review of these cases does not support this statement. Among the cases cited by the defendant are *Sawyer* v. *Sandstrom* (C.A. 5, 1980), 615 F. 2d 311; *People* v. *Smith* (1977), 75 Mich. App. 64, 254 N.W. 2d 654; and *People* v. *Hunter* (1979), 90 Mich. App. 1, 282 N.W. 2d 218. In each case the ordinance made it a crime to knowingly loiter where drug-related activity was taking place. The three cases held that the respective ordinances violated constitutional protections because a person could be found guilty without any purpose to engage in criminal activity. This is similar to the finding in *Akron* v. *Goins, supra,* and is far different from Section 138.26(A), as that ordinance requires that the person have the criminal intent to engage in unlawful activity. This court could not find a case where an ordinance or statute similar to Section 138.26(A) was held unconstitutional, and none was found in the briefs.

The defendant also argues that there was a denial of the freedom of association. Clearly that right is protected against any encroachment or infringement by the First and Fourteenth Amendments to the United States Constitution. People have the right to associate with others and that includes the right to assemble, but no individual or group of individuals has a right to gather for an illegal activity.

(3) EQUAL PROTECTION. Defendant contends that the ordinance is racially discriminatory in its application. A court can find that the law is being applied in a discriminatory man-

ner and therefore be unconstitutional. However, in this case we have only the statements of the defendant's attorney in the briefs. No testimony, affidavits, depositions or other materials were submitted. The court cannot consider this issue on bare allegations.

In summary, by this court's interpretation, Section 138.26(A) sets forth clear and definite criteria for citizens as well as police, and they can determine whether the particular loitering is unlawful. Because the ordinance requires an overt act or a circumstance be present as well as the unlawful intent, it protects individuals from arbitrary and unreasonable police action. The wording of the ordinance also prevents criminal action against harmless conduct or conduct that is not fairly communicated. Accordingly, Section 138.26 is constitutional and the motion to dismiss should be denied.

IT IS ORDERED that the motion to dismiss filed by the defendant, Jason Holley, is denied.

*Motion denied.*

## APPENDIX
## "§ 138.26 LOITERING FOR THE PURPOSE OF ENGAGING IN DRUG-RELATED ACTIVITY

"(A) No person shall loiter in or near any thoroughfare, place open to the public, or near any public or private place in a manner and under circumstances manifesting the purpose to engage in drug-related activity contrary to any of the provisions of Chapter 2925 of the Ohio Revised Code.

"(B) Among the circumstances which may be considered in determining whether such purpose is manifested are:

"1. Such person is a known unlawful drug user, possessor, or seller. For purposes of this chapter, a 'known unlawful drug user, possessor, or seller' is a person who has, within the knowledge of the arresting officer, been convicted in any court within this state of any violation involving the use, possession, or sale of any controlled substance as defined in Chapter 2925 of the Ohio Revised Code, or such person has been convicted of any violation of any of the provisions of said Chapter of the Ohio Revised Code or substantially similar laws of any political subdivision of this state or of any other state; or a person who displays physical characteristics of drug intoxication or usage, such as 'needle tracks,' burned or calloused thumb and index fingers, underweight, nervous and excited behavior;

"2. Such person is currently subject to a court order prohibiting his presence in a high drug activity geographic area;

"3. Such person behaves in such a manner as to raise a reasonable suspicion that he or she is about to engage in or is then engaged in an unlawful drug-related activity, including by way of example only, such person acting as a 'lookout' or hailing or stopping cars;

"4. Such person is physically identified by the officer as a member of a 'gang,' or association which has as its purpose illegal drug activity;

"5. Such person transfers small objects or packages in a furtive fashion;

"6. Such person takes flight or manifestly endeavors to conceal himself upon the appearance of a police officer;

"7. Such person manifestly endeavors to conceal any object which reasonably could be involved in an unlawful drug-related activity;

"8. Such person possesses any instrument, article, or thing whose customary or primary purpose is for the sale, administration or use of controlled substances such as, but not

limited to, crack pipes, push wires, chore boys, hand scales, hypodermic needles, razor blades, or other cutting tools;

"9. The area involved is by public repute to be an area of unlawful drug use and trafficking;

"10. The premises involved are known to the defendant to have been reported to law enforcement as a place of drug activity pursuant to Chapter 2925 of the Ohio Revised Code;

"11. Any vehicle involved is registered to a known unlawful drug user, possessor, or seller, or a person for whom there is an outstanding warrant for a crime involving drug-related activity.

"(C) If any provision of this section is held invalid, such invalidity shall not affect any other provision, or the application thereof, which can be given effect without the invalid provision or application, and to this end the provisions of this section are declared to be severable.

"(D) Whoever violates this section is guilty of loitering for the purpose of engaging in drug-related activity, a misdemeanor of the fourth degree." (Eff. June 30, 1989.)